UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:10-CV-00475-R

**UNITED FOOD AND COMMERCIAL
WORKERS LOCAL 227,**                                                    **PLAINTIFF**

v.

**KROGER LIMITED PARTNERSHIP I,**                                       **DEFENDANT**

**MEMORANDUM OPINION**

This matter seeks to vacate an award entered following arbitration between Plaintiff United Food and Commercial Workers Local 227 ("Local 227" or "Plaintiff") and Kroger Limited Partnership I ("Kroger" or "Defendant"). The parties have filed simultaneous motions for summary judgment (DN 16; DN 19). The parties have also filed the requisite responses and replies (DN 21; DN 24; DN 25; DN 26). These motions are now ripe for adjudication. For the reasons that follow, Defendant's Motion is GRANTED while Plaintiff's Motion is DENIED.

**BACKGROUND**

Kroger owns and operates a chain of grocery stores throughout the South and Midwest. Kroger and Local 227 are parties to a collective bargaining agreement ("CBA"). Elizabeth Pilette was employed as a day-shift grocery clerk in the Kroger located in Elizabethtown, Kentucky, until December of 2008. The store in Elizabethtown (the "Store") and its employees are covered by the CBA.

Pilette suffers from diabetes. DN 19-2 at 4. In December of 2008, Pilette's position at the Store was eliminated and she was moved to a night-stock position. *Id*. at 5. Pilette worked in this position until the spring of 2009, when on April 8, 2009, she supplied the Store's manager

1

with a doctor's note. It provided that her condition required her to work during the day shift rather than at night. *Id*. at 5. Since the Store did not have any available day-shift positions, Pilette was placed on medical leave. *Id*. Local 227 filed a grievance on her behalf in response to this action on April 17, 2009. Although the parties attempted to reach an agreement regarding an available position for Pilette that comported with her medical restrictions, no such compromise could be brokered. *Id*. at 6. As a job during the day shift failed to materialize, Pilette's medical leave was never rescinded.

On July 2, 2009, Local 227 sent a letter to Kroger petitioning for arbitration of this dispute. DN 19-3 at 8. In this correspondence, it set out the issue as Kroger's "refusal to accommodate under [the Americans with Disability Act ("ADA")]." *Id*. Arbitration was held on March 16, 2010, with Arbitrator Samuel J. Nicholas (the "Arbitrator"). *Id*. The Arbitrator made his ruling on June 8, 2010. DN 19-2. In it, he made the two preliminary decisions: the relevant portions of the CBA implicated by this action were Articles 1, 5, 9, 11, and 17,[1] and that the

---

[1] In setting forth the pertinent passages from Article 1, 5, and 9, Nicholas laid out the following:

ARTICLE 1 - INTENT AND PURPOSE
The Employer and the Union each represent that the purpose and intent of this Agreement is to promote cooperation and harmony, . . . to formulate rules to govern the relationship between Union and the Employer, to promote efficiency and service . . . . There shall be no discrimination against employees or applicants for employment because of disability.

ARTICLE 5 - MANAGEMENT RIGHTS
The management of the business and the direction or the working forces, including the rights to plan, direct, and control store operations, hire, suspend, or discharge for proper cause, relieve employees from duty because of lack of work or for other legitimate reasons, the right to study or introduce new or improved production methods or facilities, and the right to establish and maintain rules and regulations covering the operation of the stores, a violation of which shall be among the causes

2

thrust of issue to be decided in the arbitration was whether Kroger had failed to make a "reasonable accommodation" under the ADA with regard to Pilette's disability. DN 19-2 at 8-10. Relying upon these determinations, and after reviewing the language of the CBA, the Arbitrator found that claims interpreting the ADA were not arbitrable under the agreement and thus best left in the hands of a federal court. In so deciding, he relied in large part upon Article 9 of the CBA, which he found limited his ability to consider external law, like the ADA. *Id*. at 10-11. As a result, the Arbitrator denied the grievance in its entirety. This action by Local 227 opposing and seeking to vacate the Arbitrator's decision followed.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

> for discharge, are vested in the Employer; provided however, that this right shall be exercised with due regard for the rights of the employees, and provided further that it shall not be used for the purposes of discrimination against any employee.
> . . .
> ARTICLE 9 - GRIEVANCE & DISPUTE RESOLUTION PROCEDURE
> . . .
> B.3 . . . It is understood that the arbitrator is not empowered to change, modify, or alter the Agreement or any supplements thereof. The decision of the arbitrator on any issue properly before the arbitrator in accordance with the provision of the Agreement shall be final and binding on the Employer, the Union, and the employee or employees involved.

DN 19-2 at 3.

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

Local 227 sets out the following reasons why the Arbitrator's decision should be vacated: (1) he did not interpret the CBA because he refused to consider whether or not Kroger violated its terms; (2) he "manifestly disregarded" the law by failing to make a decision on whether to construe the CBA's provision in light of the ADA; (3) in determining that this matter belonged in federal court, he undermined the prior agreement between Local 227 and Kroger that all disputes should be resolved under the CBA. Kroger responds that this matter is not arbitrable, and argues that the Arbitrator's decision was a sound and reasoned interpretation of the CBA's provisions.

The discretion a court enjoys when reviewing an arbitrator's decision is substantially curtailed. *See Shelby Cnty. Health Care Corp. v. Am. Fed'n of State, Cnty. & Mun. Emps.*, 967

4

F.2d 1091, 1094 (6th Cir. 1992). When scrutinizing an arbitrator's prior interpretation of a collective bargaining agreement, a court must pay great heed to the earlier decision:

> Courts play only a limited role when asked to review the decision of an arbitrator. The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract. The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements . . . . As long as the arbitrator's award draws its essence from the collective bargaining agreement . . . the award is legitimate.

*Wehr Constructors, Inc. v. Indiana/Kentucky Reg'l Council of Carpenters*, No. 3:08-MC-14, 2008 WL 5381911, at *2 (W.D. Ky. Dec. 18, 2008) (citations and quotation marks omitted). Under the highly deferential standard, "courts are not permitted to consider the merits of an arbitration award even if the parties allege that the award rests on errors of fact or misinterpretation of the contract." *Shelby Cnty. Health Care Corp.*, 967 F.2d at 1094. "[S]o far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *Truck Drivers Local No. 164 v. Allied Waste Sys., Inc.*, 512 F.3d 211, 218 (6th Cir. 2008) (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599 (1960)).

Still, "an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice." *Wehr Constructors, Inc.*, 2008 WL 5381911, at *2 (quoting *United Steelworkers of Am.*, 363 U.S. at 593). An arbitrator's award "is legitimate only so long as it draws its essence from the collective bargaining agreement." *United Steelworkers of Am.*, 363 U.S. at 597. In addressing the appropriate standard by which a court should review an arbitrator's decision and whether its essence arises from the agreement, the Sixth Circuit has provided the following queries:

5

> Did the arbitrator act outside his authority by resolving a dispute not committed to arbitration? Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award? And in resolving any legal or factual disputes in the case, was the arbitrator arguably construing or applying the contract?

*Mich. Family Resources, Inc. v. Serv. Emps. Intern. Union*, 475 F.3d 746, 753 (6th Cir. 2007) (quotation marks omitted). Supposing that the arbitrator does not "offend any of these requirements," judicial intervention is not warranted irrespective of any errors surrounding the merits of the dispute. *Id*.

Both parties, as well as the Arbitrator, are in accord that the primary issue during the arbitration was whether Kroger had or had not made a reasonable accommodation considering Pilette's disability. What is at issue however is whether the Arbitrator acted appropriately when he adopted Kroger's argument that since he was not authorized under the CBA to consider federal law, this particular matter was not arbitrable.[2] A review of the pertinent documents leads the Court to the conclusion that this decision was the result of a good faith interpretation of the CBA, and thus may not be disturbed.

The Supreme Court has set forth that whether or not an arbitrator is sufficiently intelligent and capable of interpreting and applying outside law to a dispute is not the most relevant inquiry in determining if a matter is arbitrable. *See Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 744, (1981). Indeed an arbitrator "has no general authority to invoke public laws that conflict with the bargain between the parties." *Id*. (quoting *Alexander v.*

---

[2] This case involves a situation where both the merits of the dispute and the question of whether it was arbitrable under the CBA were submitted to the Arbitrator for his determination. Although at times a court may be tasked to decided if a matter is arbitrable, where the parties submit the issue to the arbitrator, his or her "decision on arbitrability [is reviewed] under the same deferential standard employed when reviewing an arbitrator's ruling on the merits." *Vic Wertz Distrib. Co. v. Teamsters Local 1038*, 898 F.2d 1136, 1140 (6th Cir. 1990).

*Gardner-Denver Co.*, 415 U.S. 36, 53 (1974)). Rather, the first question this Court must set about answering is whether the Arbitrator was armed by the CBA with the power to consider and apply federal law to Pilette's grievance.[3]

In examining similar dilemmas, other arbitrators have had the luxury of relying upon clear language in their governing agreements. *See e.g.*, *Challenger Caribbean Corp. v. Union General de Trabajadores de Puerto Rico*, 903 F.2d 857, 866-67 (1st Cir. 1990) (passage in agreement stated that decision of arbitrator "shall be rendered according to law"); *U.S. Postal Service v. National Ass'n of Letter Carriers, AFL-CIO*, 789 F.2d 18, 20, 252 (D.C. Cir. 1986) (decisions of management shall be consistent with applicable law); *George Day Const. Co., Inc. v. United Broth. of Carpenters and Joiners of America*, 722 F.2d 1471, 1479 (9th Cir. 1984) (the parties intended the agreement to be "in accordance with Federal and State Law"). Here, the Court has examined the CBA and finds it devoid of any such passage. While Article 1 and 5 do contain language stating that there will be no discrimination regarding employees and applicants on the basis of a disability, the sections do not contain, or even make reference to, the words "law" or "state" or "federal." DN 19-6 at 3, 5. Nor do the passages include any reference to the arbitrator's ability to consult or consider outside authorities like the ADA. *Id*. Other sections referencing federal or state statutes are far removed from Articles 1 and 5, and do not grant the arbitrator broad powers of interpretation. *See id*. at 21-22, 26; DN 19-7 at 5, 7. The dearth of guidance from these provisions is further complicated by Article 9, where the agreement

---

[3] Parties before an arbitrator may also confer the authority to consider outside law where they specifically make such a request through submissions to the arbitrator. *See Challenger Caribbean Corp. v. Union General de Trabajadores de Puerto Rico*, 903 F.2d 857, 866-67 (1st Cir. 1990). Such was not the case in the instant matter. *See* DN 19-2 at 9 (Arbitrator states that the parties did not agree to allow him to decide the claim under the ADA).

prohibits the administrator from changing, modifying, or altering the CBA during the grievance process. DN 19-6 at 8. While indicative of an arbitrator's limited role in resolving disputes, Article 9 does not strictly foreclose the use of outside law as Kroger's motion has suggested.

Since the CBA does not explicitly forbid or permit the Arbitrator from considering external law, it is without question that Local 227's interpretation of the agreement is plausible; nevertheless, the Court is "satisfied that it is not the only plausible one." *Challenger Caribbean Corp. v. Union General de Trabajadores de Puerto Rico*, 903 F.2d 857, 860 (1st Cir. 1990). "Unless the arbitrator's decision . . . is not even arguably based on a plausible interpretation of the contract between the parties, the arbitral award is entitled to deference." *Id*. (citation omitted). The Arbitrator's opinion construed the language of Articles 1, 5, and 9 with the goal of determining the authority he possessed under the CBA. He ultimately determined that Article 9 did not allow him to consider external law. According to the Sixth Circuit test in *Michigan Family Resources*, where a court finds the arbitrator is arguably construing the agreement, such a conclusion effectively insulates his decision from the court's scrutiny. 475 F.3d at 753.

Local 227 astutely notes that in the Arbitrator's opinion, he did not specifically write how he interpreted that Article 5 and 9 of the CBA disallowed references to external law. This is of no concern. "[I]n most cases, it will suffice to enforce the award that the arbitrator appeared to be engaged in interpretation, and if there is doubt [the court should] presume that the arbitrator was doing just that." *Id*. Here, the Arbitrator's opinion bears all the "hallmarks of interpretation," reciting and scrutinizing passages from the CBA in an attempt to reach a conclusion in good faith. *See id*. That his analysis is somewhat cursory is unfortunate; however, this is not a basis upon which the Court may vacate his decision.

8

That Local 227 disagrees with the Arbitrator's construction of Article 9 provides further evidence that the Court's hands are tied in reviewing his conclusions. In its response, Local 227 advanced its objection to the Arbitrator's findings that Article 9 prevented him from considering the ramifications of external law on the matter. It wrote that "[b]y referencing the ADA in deciding whether Kroger engaged in disability discrimination, [the Arbitrator] would not have violated Article 9." DN 21 at 3. Such a statement may be distilled down to two alternative declarations: the Arbitrator believed that he could not use the ADA under Article 9; and Local 227 believes that he could use the ADA under Article 9. Whoever's interpretation of the CBA is more reasonable is immaterial. Rather the only question that needs to be answered is if the Arbitrator's decision was driven by the essence of the agreement? From his opinion, it is clear that the Arbitrator read Article 9 and made a judgment that reference to the ADA was forbidden. To make such a decision, he had to review the passage and interpret it in light of the CBA's other sections. Consequently, there can be little doubt that such a determination draws its essence from the CBA. Local 227's motion represents nothing more than its disagreement with this interpretation and therefore must be rejected.

Even ignoring these decisions and accepting Local 227's contention that use of the word "disability" constructively incorporates the ADA into the CBA, such broad discretion on the part of the Arbitrator diverges from prior Supreme Court precedent. In *Barrentine*, the Court set out that "[i]f an arbitral decision is based 'solely upon the arbitrator's view of the requirements of enacted legislation,' rather than on an interpretation of the collective-bargaining agreement, the arbitrator has 'exceeded the scope of the submission,' and the award will not be enforced." 450 U.S. 728 at 744 (quoting *Alexander*, 415 U.S. at 53). As the term "disability" is not defined or

9

elaborated upon in the CBA, adopting one from the ADA without more definite language counseling such action would have been a brash act on the part of the Arbitrator, and in violation of his duties under the agreement.

## CONCLUSION

As the Arbitrator interpreted portions of the CBA in reaching his award, the deferential standard does not allow this Court to revisit his earlier conclusions. FOR THE FOREGOING REASONS, Defendant's Motion for Summary Judgement (DN 19) is GRANTED. Plaintiff's Motion for Summary Judgment (DN 16) is DENIED. An appropriate order shall issue.